OHIO FALLS CAR MANUF'G CO. v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Sixth Circuit. December 9, 1895.)

No. 327.

1. LIEN FOR SUPPLIES—KENTUCKY STATUTES—EFFECT OF ACCEPTING NEW SECURITY.

A statute of Kentucky, passed March 20, 1876, provides that when the property of any railroad company or manufacturing establishment shall be assigned for the benefit of creditors or pass into the hands of a receiver, trustee, or other officer, to be distributed for the benefit of creditors, the employés of such company or establishment and persons who shall have supplied materials for carrying on the business shall have a lien upon the

property embarked in the business, superior to the lien of any mortgage. The O. Car Co. sold and delivered cars to the L. Ry. Co., for which there was due to it, on July 31, 1893, a balance of $9,000, the railroad company being then a going concern. On that date the railway company made a note for $9,000 to the Bank of A., payable August 30, 1893, for which it deposited as collateral $14,000 of its bonds, and agreed to deposit other collateral as required, and that the bank should have a lien on all property or security at any time left in its possession, and upon any deposit balance of the railway company. This note was guarantied by the O. Car Co. Subsequently, foreclosure proceedings having been commenced against the railway company, and a receiver appointed, the car company intervened, alleging that the note was made to the bank for its use, and that it had taken up the note, offering to bring the bonds into court, and claiming a lien for the value of the cars upon the property of the railroad company, superior to the mortgages, which were made after the passage of the statute. *Held,* that even assuming that the car company, at the time the note was given, had an inchoate lien, it had waived such lien by contracting for a new security in the form of the note, with its accompanying stipulations.

**2.** PAYMENT—GUARANTY OF LOAN BY CREDITOR.

It seems, further, that the debt due to the car company was paid by the proceeds of a loan made by the Bank of A., and that the effect of such payment was not altered by the car company's becoming surety on the note upon which the loan was secured.

## Appeal from the Circuit Court of the United States for the District of Kentucky.

The Louisville, St. Louis & Texas Railway Company is a corporation of the state of Kentucky, owning a line of railroad entirely within that state. Under bills filed by both general and mortgage creditors, a receiver was appointed in 1893 by the United States circuit court for the district of Kentucky, who has since been in the exclusive operation and possession of the entire railroad and other assets of the company. The Ohio Falls Car Manufacturing Company, claiming to be a creditor of the said railroad company, has filed an intervening petition, and claims priority of satisfaction over the mortgage creditors by reason of a statute of the state of Kentucky, passed March 20, 1876. That statute antedates both of the mortgages sought to be foreclosed in the principal suit. Sections 1 and 2 of that act read as follows:

"Section 1. When the property or effects of any railroad company, or of any owner or operator of any rolling mill, foundry or other manufacturing establishment, whether incorporated or not, shall be assigned for the benefit of creditors, or shall come into the hands of any executor, administrator, commissioner, receiver of a court, trustee, or assignee, for the benefit of creditors, or shall in anywise come to be distributed among creditors, whether by operation of law or by the act of such company, owner, or operator, the employés of such company, owner, or operator in such business, and the persons who shall have supplied materials or supplies for the carrying on of such business, shall have a lien upon so much of said property and effects as may have been embarked in such business, and all the accessories connected therewith, including the interest of such company, owner, or operator in the real estate used in carrying on such business.

"Sec. 2. The said lien shall be superior to the lien of any mortgage or other incumbrance heretofore or hereafter created, and shall be for the whole amount due such employés as such, or due for such materials or supplies: provided that no president or other chief officer, nor any director, or stockholder of any such company, shall be deemed an employé within the meaning of this act."

The facts upon which the claim of priority is predicated are stated in the intervening petition, and are substantially these: Prior to July 31, 1893, the Ohio Falls Car Manufacturing Company sold and delivered to the said railroad company, at its special instance and request, a number of railway freight cars, for which a stated account was rendered July 31, 1893, showing a balance due of nine thousand dollars. The petition then alleges: "That on the

31st of July, 1893, and in consideration of the said indebtedness from said railway company to your petitioner, or to its use, the certain promissory notes of said railway company, of said date, for the said sum of nine thousand dollars, due on August 30, 1893. Said note was, in form, payable to the Bank of America, of the city of New York; but it was executed to and for the use of your petitioner upon the consideration aforesaid, and it was indorsed and payment guarantied by your petitioner." It is further alleged that, upon default in payment by the railway company, the note was "taken up" by petitioner. The petition further charges that the said railway company, at the time it made the note, deposited with the Bank of America, to secure its payment, 14 mortgage bonds of the said company, of the denomination of $1,000 each, being second-mortgage bonds, and secured in one of the mortgages here being foreclosed. Concerning these bonds the petition says: "The said mortgage bonds your petitioner offers to produce and file for such disposition as the court may direct."

The note referred to is an exhibit, and is in these words:

"$9,000.                                              New York, July 31, 1893.

"On August 30th, 1893, after date, without grace, the undersigned, for value received, promise to pay to the Bank of America, or order, at its banking house, in the city of New York, in funds current at the New York clearing house, nine thousand dollars, having deposited with the said bank as collateral security for the payment of this and all other liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing, the following property, viz.: Fourteen (14) general mortgage bonds of the Louisville, St. Louis and Texas Ry. Co., Nos. 4327 to 4340, both inclusive. The undersigned hereby agree to deposit with the said bank such additional collateral security as the said bank may from time to time demand, and also hereby give to the said bank a lien for the amount of all the liabilities aforesaid, upon all the property or securities at any time given unto or left in the possession of the said bank by the undersigned, and also upon any balance of the deposit account of the undersigned with the said bank. On the nonperformance of the foregoing agreements as to furnishing additional collateral, or upon the nonpayment of any of the above-mentioned liabilities, then and in either such case the said bank is hereby authorized to sell, assign, and deliver the whole or any part of the said securities, or any substitutes therefor, or any additions thereto, or any other property at any time given unto or left in the possession of the said bank by the undersigned for safe-keeping or otherwise, at any broker's board or at public or private sale, at the option of the said bank, or of either of its officers, without either advertisement or notice, which are hereby expressly waived. If such securities or property are sold at public sale, the said bank may itself purchase the whole or any part thereof, free from all right of redemption on the part of the undersigned, which is hereby waived and released. In the case of any such sale the said bank may first deduct all the expenses for collection, sale, or delivery of the property or securities so sold, and may then apply the residue to any one or more or all of the said liabilities, whether due or not due, as either of its officers shall deem proper, making proper rebate for interest on liabilities not then due, and returning the overplus, if any, to the undersigned, who shall remain liable to the said bank for any deficiency arising upon any such sale. The undersigned do hereby further authorize the said bank at its option, at any time, to appropriate and apply to the payment of any of the said liabilities, whether now existing or hereafter contracted, any and all moneys now or hereafter in the hands of the said bank on deposit or otherwise, to the credit of or belonging to the undersigned, whether the said liabilities are due or not due. The undersigned further agree that, upon any transfer of this note, the Bank of America may deliver the said collaterals, or any part thereof, to the transferee, who shall thereupon become vested with all the powers and rights above given to the said bank in respect thereto; and the said Bank of America shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter.

"Louisville, St. Louis & Texas Railway Company,

"[Seal.]                                         W. V. McCracken, President."

Said note is indorsed on back as follows:

"In consideration of the granting at my request, hereby made, of the loan evidenced by the within note, I hereby guaranty to the Bank of America, of the city of New York, its successors, indorsers, or assigns, the prompt payment of the said loan, and hereby consent that the securities for the said loan may be exchanged or surrendered from time to time, or the payment of said loan extended, without further notice to me or assent from me, and that I will remain bound upon this guaranty, notwithstanding such changes, surrender, or extension.                                          The Ohio Falls Car Man'f'g Co.,
                                                    "By J. L. Smyser, Pt."

The petition asserted a lien, under the Kentucky statute, prior in right to any mortgage made by said company. The Central Trust Company, as mortgagee under both mortgages, demurred, in so far as any relief was sought against the mortgages. This demurrer was sustained, and the petition dismissed so far as it sought priority of satisfaction or asserted any lien against the property of the railway company.

Fairleigh & Straus, for appellant.

Butler, Tillman & Hubbard and Pirtle & Trabue, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

After stating the foregoing facts, the opinion of the court was delivered by LURTON, Circuit Judge.

In the view we take of this case, it becomes unnecessary to consider the fact that this petition was not filed within 60 days after the appointment of the receiver, which appellee contends was essential to the preservation of the statutory lien, under section 5 of the act of March 20, 1876. Neither is it necessary to decide whether freight cars are "materials or supplies," within the meaning of the Kentucky act.

It is clear that before the railway company's note was made and discounted, July 31, 1893, the car company had no complete lien on the property of the railway company. The statute only gave a lien upon the occurrence of some one of the situations mentioned. None of the conditions upon which the statutory lien depended had arisen, transpired, or occurred. At most, it had a possibility of a lien should its claim remain unpaid until the property of its debtor should be "assigned for the benefit of creditors," or should "come into the hands of any executor, administrator, commissioner, receiver of a court, trustee, or assignee, or shall in any wise come to be distributed among creditors, whether by operation of the law, or by the act of such company, owner, or operator in such business." The plain purpose of the act was that furnishers of material or supplies should be preferred in the distribution of the assets of an insolvent company over mortgages or other incumbrances theretofore or thereafter created. But this lien did not actually attach so long as the property remained in the hands of the debtor railway company, and was managed and operated by it on its own account. The most that can be said is that such a creditor, prior to the happening of one or other of the conditions mentioned in the statute, had an unfixed right in the property of the debtor, amounting, at most, to an inchoate lien, which could be perfected upon the occurrence of one or other of the conditions precedent named in the

statute, and the beginning of legal proceedings for its declaration and enforcement within the time and in the manner prescribed by the statute.   But if we assume that it had, for the security of the balance due on its account, an inchoate lien, then it seems clear that this incipient security was lost as the legal result of the transaction stated as occurring July 31, 1893.   The facts concerning the arrangement and settlement of that date are reasonably subject to but two constructions, either of which is fatal to the lien now asserted.   One interpretation, entirely reasonable and consistent with the facts stated in the petition and shown on the face of the note made to the Bank of America by the Ohio Falls Car Manufacturing Company, is that the balance due by the railway company to the car company for freight cars was paid and discharged with money borrowed from the Bank of America, the proceeds of the car company's note, secured by its mortgage bonds deposited as collateral, and further secured by the guaranty of the car company.   The car company thereby secured the immediate payment of an open account, and, though it assumed a liability as surety for the railway company, yet such arrangements are not unusual nor inconsistent with an intent that the old account should be paid and discharged. Whether its position was better or worse in respect of security after this settlement is debatable.   It had, at least, a collateral security in the second mortgage bonds deposited with the bank, to which, by subrogation, it would be entitled in case, as surety, it was compelled to pay the note.   The value of this collateral may have been the subject of doubt; nothing is averred in the petition concerning their value.

But it is not necessary to decide this case upon the question of payment.   We prefer to rest our decision upon the ground that, if it be assumed the car company had a complete or an incipient lien, that lien was waived.   If it be, as appellant has affirmed in its petition and urged in argument, that the note of the railway company was, in legal effect and intent, executed to the car company, or to the Bank of America for the use of the car company, the latter must be regarded as having thereby contracted for a new security. Appellant cannot be heard to say that, when the note was made to the bank, as payee, this was only done to accommodate the car company, and is to have no greater legal consequence than if the note had been made to the car company as payee, without adopting the entire agreement nominally made between the bank and the railway company.   To contend that the requirement that the note should be secured by a deposit of mortgage bonds and by a lien on all securities owned by it in the bank's possession, or which should thereafter come to its possession, as well as upon any balance to its credit as a depositor, was a requirement of the bank, and not an agreement between the railway company and the car company for a new security, is wholly inconsistent with its contention that the bank was but the nominal payee.   The agreement to take a note secured by a deposit of the railway company's second-mortgage bonds was an agreement for a new security, inconsistent with the

lien now asserted, and consistent only with an intent to waive the inchoate lien dependent upon the Kentucky statute. The vague offer to file the bonds thus contracted for, as a security "subject to such disposition as the court may direct," cannot operate to revive a lien waived as a consequence of an agreement for a security inconsistent with the lien sought to be restored and enforced. Central Trust Co. v. Richmond, N., I. & B. R. Co., 15 C. C. A. 273, 68 Fed. 90–94; Grant v. Strong, 18 Wall. 623.

The decree sustaining the demurrer of the Central Trust Company is, for the reasons given, affirmed.